IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:24-cv-03606-SKC-TPO

GREGORY MCLAUGHLIN, an individual,

    Plaintiff,

v.

AUTOMATION EXCHANGE, INC., a North Carolina corporation,
MYRIAD CAPITAL, INC., a North Carolina corporation,[1]
MYRIAD FORCE, INC., a North Carolina corporation, and
GREGORY WILSON, an individual,

    Defendants.

---

**SCHEDULING ORDER**

---

### 1. DATE OF CONFERENCE AND APPEARANCES OF COUNSEL

The Court held a Scheduling Conference at 9:30 a.m. on July 1, 2025 before Magistrate Judge Timothy P. O'Hara.

Andrew Swan and **Samuel Engelson**, of Leventhal Swan Taylor Temming PC, appeared as counsel on behalf of Plaintiff (via video teleconference).

**Joseph Hykan**, of Womble Bond Dickinson (US) LLP, appeared as counsel on behalf of Defendants Automation Exchange, Inc., Myriad Force, Inc., and Gregory Wilson (collectively, the Served Defendants).

---

[1] This Court notes that Myriad Capital, Inc. has not been served, and according to the Served Defendants, it may not exist. Plaintiff continues to evaluate whether he should remove this entity as a named Defendant.

## 2.  STATEMENT OF JURISDICTION

Plaintiff alleges diversity jurisdiction under 28 U.S.C. § 1332(a): The citizenship of the parties is completely diverse. Mr. McLaughlin is domiciled in Colorado. Defendant Automation Exchange, Inc. ("AEX"), Myriad Force, Inc., and Myriad Capital, Inc. are citizens of North Carolina. Mr. Wilson is domiciled in North Carolina. The Corporate Defendants each transacted business in North Carolina and maintain their respective headquarters and principal places of business in North Carolina. All parties are citizens of, domiciled in, or live in different states. Additionally, the amount in controversy exceeds $75,000, exclusive of interest and costs.

Plaintiff also alleges federal question jurisdiction pursuant to 28 U.S.C. § 1331 because he alleges a claim under the Age Discrimination in Employment Act, 29 U.S.C. § 623: This Court has supplemental jurisdiction over Plaintiff's state and common law claims pursuant to 28 U.S.C. § 1367 because the claims are so related to the ADEA claim that they form part of the same case or controversy relating to Plaintiff's employment with Defendants.

## 3.  STATEMENT OF CLAIMS AND DEFENSES

**Plaintiff:**

Plaintiff alleges that Defendants (a) discriminated against and terminated him due to his age (*i.e.*, over 40 years old) in violation of the ADEA and the Colorado Anti-Discrimination Act ("CADA"); (b) failed to pay earned, vested, determinable, and contractually owed bonuses; (c) failed to reimbursable personal business expenses; (d) failed to pay accrued unused vacation days upon termination; (e) breached his

employment contract; (f) failed to transfer equity grants; (g) engaged in constructive fraud by materially representing the business to Plaintiff; (h) failed to reimburse improperly withheld taxes; and (i) fraudulently induced Plaintiff to accept employment with them based on deceptive and material misrepresentations about the business.

**b. Served Defendants:**

Plaintiff's claims are meritless and self-contradicting. Defendant briefly served as CEO of AEX. He never held any position with Myriad Force or Mr. Wilson individually, and never had any responsibilities or duties for an employer other than AEX. When he accepted the job as CEO of AEX he knew that he was tasked with leading a fledgling company into a brand-new market. Any reasonable person in Plaintiff's position would have known that the job was difficult and that success was not guaranteed. Indeed, he was expressly told about weaknesses of, and threats to, AEX's planned launch in the United States.

Plaintiff performed poorly as AEX's CEO. He ignored instructions, was often absent or unresponsive, and blamed others rather than taking accountability or focusing on solutions. He was discharged from his position of employment after less than a year based on his poor performance.

Plaintiff's claims that he was fraudulently induced to accept the job as CEO fail. Nearly all of the statements he attributes to "Defendants" were statements of opinion or of generalized optimism about a business that Plaintiff knew was not yet operational. Other statements that Plaintiff attributes to "Defendants" were simply never made, and

are flatly contradicted by written representations AEX made regarding its business and plans for entry to the US market.

Plaintiff's claims that he was discharged for an improper purpose are false. He offers no facts that tend to show his age played a role in the decision to discharge him. Nor would those allegations make sense given that the short time that passed between his hiring, at which AEX obviously knew his age, and his discharge. He also alleges no facts showing he was discharged to avoid paying him a bonus. AEX had the sole discretion to deny him a bonus. And Plaintiff does not, and cannot, allege how AEX was required to measure his performance, or that his and the company's performance entitled him to a bonus. Finally, Plaintiff's false allegations regarding the state of the company belie his claims that he was discharged for an improper purpose. The evidence will show that Plaintiff was an unreliable, incompetent, and absentee CEO. But, even if he could prove the facts alleged in the Complaint, he would succeed only in showing that the company struggled under his leadership and that he fundamentally disagreed with AEX's director's regarding the state of the business and the desirability of AEX's products and services. That disagreement is a more than adequate reason to discharge a CEO.

Plaintiff's claims that he earned and was denied other compensation, in addition to the supposed bonus, are baseless. Plaintiff's letter of appointment is unambiguous that he would be offered "the right to participate and co-invest in up to $500k of the total equity in the business." There is no allegation in the complaint that he ever exercised that right. His claim that he was wrongfully denied equity compensation is therefore

4

baseless if not frivolous. His other claims for wrongful denial of compensation are equally meritless. For example, Plaintiff's claim that his taxes were wrongfully withheld is related to his insistence, while employed at AEX, that he was a resident of Florida and not subject to state income tax. AEX withheld North Carolina based income tax for part of his tenure, because he was classified in AEX's systems as a North Carolina employee. AEX later ceased that withholding at Plaintiff's request and based on his insistence that he resided in Florida. According to Plaintiff's complaint, which alleges he resided in Colorado while employed at AEX, his representations regarding his supposed Florida residence were false. But, even if they were true, AEX did not retain or benefit from the withheld funds, which were paid to the state of North Carolina. If an innocent mistake was made, Plaintiff's remedy is to seek reimbursement from the state.

While the case against AEX is weak, the case against Myriad Force and Greg Wilson is non-existent. Myriad Force simply did not take any of the actions alleged in the Complaint, and it is not a parent or subsidiary of AEX. And Mr. Wilson's alleged actions were taken only in his role as a director of AEX, and cannot support liability for the vast majority of claims alleged against Mr. Wilson.

### 4.  UNDISPUTED FACTS

**The following facts are undisputed:**

1. AEX is a North Carolina corporation. AEX maintains its principal place of business at 6000 Fairview Road, Suite 325, Charlotte, North Carolina 28210.

2. Myriad Force, Inc. is a North Carolina corporation. Myriad maintains its principal place of business at 100 West John Street, Suite E, Matthews, North Carolina

5

28105.

3. Mr. Wilson is an individual domiciled in North Carolina. Mr. Wilson is a founder of AEX and Myriad Force, Inc.

4. Plaintiff was hired by AEX to serve as AEX's CEO in June 2023.

5. Plaintiff began his employment with AEX in June 2023.

6. On May 29, 2024, AEX terminated Plaintiff's employment.

## 5. COMPUTATION OF DAMAGES

**Plaintiff**

Plaintiff is not currently in possession of all information and documents necessary to calculate damages. Plaintiff requires discovery to calculate all damages. Plaintiff believes Defendants are in possession of information and documents relevant to calculations of damages.

Plaintiff's damages in part consist of:

(a) $49,726.03 in unpaid bonuses;

(b) $149,178.09 in treble damages under the CWA for unpaid earned bonuses;

(c) $16,301.37 in unpaid accrued vacation time;

(d) $48,904.11 in treble damages under the CWA for unpaid earned vacation time;

(e) $3,401.65 in unreimbursed personal business expenses;

(f) $10,204.95 in treble damages under the CWA for unreimbursed expenses;

(g) $250,000.00 in equity; and

(h) $8,559.00 in improperly withheld income tax.

Plaintiff is also entitled to additional compensatory and/or punitive damages related to Plaintiff's claims under the ADEA, CADA, and common law.

Plaintiff is also entitled to attorneys' fees and costs under the one-way fee-shifting provisions of the ADEA, CADA, and CWA.

**Served Defendants:**

Do not seek damages.

**Court:** Plaintiff shall update his damages within 45 days of the Scheduling Conference (i.e., by **August 15, 2025**).

### 6. REPORT OF PRECONFERENCE DISCOVERY AND MEETING UNDER FED. R. CIV. P. 26(f)

**a.    Date of Rule 26(f) meeting:**

The parties conferred on June 23, 2025.

**Names of each participant and party he/she represented:**

Samuel D. Engelson of Leventhal Swan Taylor Temming PC on behalf of Plaintiff.

Kris Kostolansky and Joseph Hykan on behalf of Served Defendants.

**b.    Statement as to when Rule 26(a)(1) disclosures were made or will be made:**

The parties are to exchange initial disclosures within 30 days of Served Defendants' answers.

**Court:** The Parties shall exchange Rule 26(a)(1) Initial Disclosures by **July 21, 2025**.

  c. **Proposed changes, if any, in timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1):**

  The parties are to exchange initial disclosures within 30 days of Served Defendants' answers.

**Court**: The Parties shall exchange Rule 26(a)(1) Initial Disclosures by **July 21, 2025**.

  d. **Statement concerning any agreements to conduct informal discovery:**

The parties have exchanged some information and documents via informal discovery.

  e. **Statement concerning any other agreements or procedures to reduce discovery and other litigation costs, including the use of a unified exhibit numbering system:**

The parties will continue to discuss voluntary production of documents for purposes of settlement. The parties agree to use a unified exhibit numbering system.

  f. **Statement as to whether the parties anticipate that their claims or defenses will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form:**

The parties anticipate that their claims and defenses will involve a relatively low amount of electronically stored information ("ESI"), including, but not limited to, payroll and time records and electronic communications (*e.g.*, emails and text messages), and that as such extensive ESI discovery is unlikely. This matter should involve a relatively small number of custodians and relatively short time period. Where possible, the parties

will produce documents in a searchable PDF or .tif format. with load files. Any disclosures of documents or information claimed as privileged or protected shall be governed by Fed. R. Civ. P. 26(b)(5)(B), and pursuant to Federal Rules of Evidence 502(b), with reasonable precautions taken.

      g.    **Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case:**

The parties discussed settlement prior to the lawsuit. The parties have not substantively discussed settlement since the filing of the original complaint. Plaintiff will require discovery before any mediation. Plaintiff declined to participate in mediation with the Colorado Civil Rights Division.

Served Defendants: After the lawsuit was filed, Plaintiff filed charges of discrimination with the Colorado Civil Rights Division to initiate the administrative process to resolve his age discrimination claims. Served Defendants voluntarily offered to engage in in-person mediation of the age discrimination charges, but Plaintiff refused to participate in mediation unless Served Defendants made a pre-mediation settlement offer that he deemed appropriate. Served Defendants remain willing to engage in mediation in good faith.

**Court:** The Court advised the Parties of the option of a Settlement Conference. At such later time if the Parties would be interested in a Settlement Conference with this Court, they shall jointly contact Magistrate Judge O'Hara's Chambers by email to secure a date and then file a joint motion to request the Settlement Conference (including reference to the reserved date) to be ruled upon or referred by the District Judge.

### 7. CONSENT

All parties <u>do not</u> consent to the exercise of jurisdiction of a magistrate judge.

### 8. DISCOVERY LIMITATIONS

a. **Modifications which any party proposes to the presumptive numbers of depositions or interrogatories contained in the Federal Rules:**

The parties agree to a proportional limit of ten (10) depositions per side in this case. Either party may petition the Court for additional depositions for good cause shown.

<u>Court</u>: Each side is limited to **12** depositions including depositions of the Parties, fact witnesses, and expert witnesses.

The parties seek the presumptive limit of twenty-five (25) written interrogatories per party.

b. **Limitations which any party proposes on the length of depositions:**

The parties will follow the limits of one day of seven (7) hours as set forth in Fed. R. Civ. P. 30(d)(1) for all depositions.

<u>Court</u>: Each side may take **five** depositions of any witness of **seven** hours in length. Remaining depositions are limited to **four** hours in length.

c. **Limitations which any party proposes on the number of requests for production and/or requests for admission:**

The parties propose that each party be allowed to serve twenty-five (25) requests for production and twenty-five (25) requests for admission. Each party reserves the right to seek leave to serve additional discovery for good cause shown.

   **d.**  **Deadline for service of Interrogatories, Requests for Production of Documents and/or Admissions:**

  The parties shall serve interrogatories, requests for production, and/or requests for admission by no later than the first business day on or following 63 days prior to close of discovery.

  **Court:** The deadline for submitting written discovery requests is **January 16, 2026**.

  **e.**  **Other Planning or Discovery Orders:**

  None at this time.

**Court:** (1) The Parties shall follow the procedure set out at Section VI of the <u>Magistrate Judges' Uniform Civil Practice Standards</u> (D.C.COLO.MJ). Rather than file a motion about a discovery dispute, the Parties first shall confer about the matter. If the Parties are unable to resolve the dispute on their own, then the Party seeking relief shall request a Discovery Conference with the Court by sending an email, copied to all Parties, to O'Hara_Chambers@cod.uscourts.gov. The Court will issue an order to schedule the Discovery Conference and to provide the Parties with instructions on how to proceed. The Court will determine at the conference whether to grant leave to file a motion. (As permitted by D.C.COLO.MJ § VI, a motion may be filed without the prerequisite discovery conference for discovery that concerns a pro se incarcerated litigant or a third party.)

(2) The Court requires that all conferral attempts be meaningful. A meaningful conferral is one done personally such as face-to-face, in a video conference, or over the telephone. *See* D.C.COLO.MJ, § VI(2); *see also Bautista v. MVT Services, LLC*, No. 16-

cv-01086-NYW, 2017 WL 2082925, *4 (D. Colo. Mar. 20, 2017). A meaningful conferral also is one that occurs in a reasonable timeframe before any relevant deadline. (3) Should the Parties file a Motion for Protective Order, then they shall comply with Section V(5) the Magistrate Judges' Uniform Civil Practice Standards (D.C.COLO.MJ) and the model Joint Protective Order attached thereto as Appendix A.

### 9. CASE PLAN AND SCHEDULE

a.  **Deadline for Joinder of Parties and Amendment of Pleadings:**

Plaintiff requests that the parties submit a proposal for deadline for joinder of parties and amendments to pleadings until after resolution of the pending Motion to Dismiss.

Served Defendants propose that, per this Court's template scheduling order, the default deadline for joinder of parties and amendment of pleadings be no later than August 7, 2025 (45 days after the date of the scheduling conference).

**Court:** Forty-five (45) days after the date of the Scheduling Conference (i.e., by **August 15, 2025**). This Court also understands the need for the Parties to clarify exactly who the appropriate corporate Defendants are, as this Court discusses at footnote 1 above. Ultimately amendments are subject to Fed. R. Civ. P. 15.

b.  **Discovery Cut-Off:**

Plaintiff requests that the parties submit a proposal for a discovery cut-off date after resolution of the pending Motion to Dismiss. Should the Court elect to set a discovery cut-off at this time, Plaintiff proposes March 30, 2026.

12

Served Defendants propose a discovery cut-off of January 12, 2026.

**Court:** **March 2, 2026**

c. **Dispositive Motion Deadline:**

Plaintiff requests that the parties submit a proposal for dispositive motion deadline(s) after resolution of the pending Motion to Dismiss. Should the Court elect to set a discovery cut-off at this time, Plaintiff proposes May 1, 2026.

Served Defendants propose a deadline for dispositive motions of January 12, 2026.

**Court:** **April 10, 2026**

d. **Expert Witness Disclosure:**

1. **The parties shall identify anticipated fields of expert testimony, if any:**

Plaintiff anticipates retaining a damages expert.

The parties reserve the right to designate an affirmative expert or any necessary rebuttal to the other party's experts in accordance with Fed. R. Civ. P. 26.

2. **Limitations which the parties propose on the use or number of experts:**

The Parties propose that each side be limited to one (1) expert witness.

13

3. **The parties shall designate all affirmative experts and provide opposing counsel with all information specified in Fed. R. Civ. P. 26(a)(2) on or before:**

At least 90 days before trial pursuant to Fed. R. Civ. P. 26(a)(2)(D)(i).

<u>**Court:**</u>   December 15, 2025

4. **The parties shall designate all rebuttal experts and provide opposing counsel and any pro se party with all information specified in Fed. R. Civ. P. 26(a)(2) on or before:**

Thirty (30) days after the original expert disclosures.

<u>**Court:**</u>   January 23, 2026

e. **Identification of Persons to Be Deposed:**

**Plaintiff:**

Gregory Wilson

Alexandra Davis

Lance van der Spuy

David Robinson

Jos Van Zyl

Kyle Stanton

Brian Jarvis

Christopher Peters

John Mclauchlin

14

Any other witness identified by Defendants during discovery.

**Served Defendants:**

Plaintiff

Jim Sanders

### 10.  DATES FOR FURTHER CONFERENCES

a. The Court will hold a Status Conference on **October 28, 2025** at **10:30 a.m**. in Courtroom C-402, on the fourth floor of the Byron G. Rogers United States Courthouse located at 1929 Stout Street, Denver, Colorado. It will be an in-person proceeding. Closer to that time, should the Parties determine that the Status Conference is unnecessary, they may jointly contact Chambers to vacate it.

b. District Judge Crews presides over the Final Pretrial Conference which he combines with the Trial Preparation Conference. *See* Section D of <u>District Judge Crews' Standing Order for Civil Cases</u>. **Judge Crews will set a conference date after either (1) the Court has ruled on all filed dispositive motions or (2) the Dispositive Motions Deadline has passed and no dispositive motions were filed. The Parties shall email District Judge Crews' Chambers when the conference is ready to be set.**

**If no dispositive motions are filed, then the Parties shall email District Judge Crews' Chambers within seven days after the Dispositive Motions Deadline (i.e.,** by April 17, 2026**) about setting the conference.** The Parties' proposed Final Pretrial Order is due at least seven days before the combined Final Pretrial Conference/Trial Preparation Conference, and a Word version should also be

15

emailed to Judge Crews' Chambers at crews_chambers@cod.uscourts.gov.

## 11.  OTHER SCHEDULING MATTERS

**a.    Identify those discovery or scheduling issues, if any, on which counsel after a good faith effort, were unable to reach an agreement:**

None.

**b.    Anticipated length of trial and whether trial is to the court or jury:**

The parties anticipate a trial in this matter lasting five (5) days. The case is to be tried to a jury.

**c.    No pretrial proceedings will be more efficiently or economically conducted in the District Court's facilities at 212 N. Wahsatch Street, Colorado Springs, Colorado 80903-3476; Wayne Aspinall U.S. Courthouse/Federal Building, 402 Rood Avenue, Grand Junction, Colorado 81501-2520; or the U.S. Courthouse/Federal Building, La Plata County Courthouse 1060 E. 2nd Avenue, Suite 150, Durango, Colorado 81301.**

## 12.  NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with D.C.COLO.LCivR 6.1(c) by serving the motion contemporaneously upon the moving attorney's client.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1(a).

Counsel and unrepresented parties are reminded that any change of contact information must be reported and filed with the Court pursuant to the applicable local rule.

### 13. AMENDMENTS TO SCHEDULING ORDER

This Scheduling Order may be altered or amended only upon a showing of good cause.

DATED at Denver, Colorado, this 2nd day of July, 2025.

BY THE COURT:

Timothy P. O'Hara
United States Magistrate Judge