IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:24-cv-03606-SKC-TPO

GREGORY MCLAUGHLIN,

     Plaintiff,

v.

AUTOMATION EXCHANGE, INC., *et al.*,

     Defendants.

---

## ORDER TO DISMISS FOR LACK OF PERSONAL JURISDICTION

---

Plaintiff Gregory McLaughlin was previously employed as the Chief Executive Officer of Defendant Automation Exchange, Inc. (AEX) from May 2023 to May 2024. Dkt. 1, ¶¶46, 77; Dkt. 33-1, ¶4. AEX is a North Carolina corporation that provides "automated and scalable systems and services for [fiber] network operators throughout the [United States]." Dkt. 33-3, p.3. Plaintiff has filed employment, wage, and contract-based claims against AEX and Gregory Wilson, AEX's founder. Plaintiff also asserts claims against Myriad Capital, Inc. and Myriad Force, Inc., both of which are North Carolina corporations and alleged to have some ownership stake in AEX.[1]

---

[1] In his pleading, Plaintiff alleges "Myriad is a parent company of AEX," but he does not specify which one. Dkt. 31, ¶40. Defendants attach the affidavit of Lance van der Spuy, the director of Myriad Force, who attests that Myriad Force does not direct the activities of AEX's executives or employees. Mr. van der Spuy also states he has never

Plaintiff filed his claims in this forum and Defendants filed a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).[2] Dkt. 33. Plaintiff argues he has made a *prima facie* showing of jurisdiction. Dkt. 37. The Court has reviewed the Motion, related briefing, exhibits, and applicable law. No hearing is necessary. For the following reasons, the Court finds that personal jurisdiction is not proper in this forum, and therefore, dismisses this case.

## STANDARD OF REVIEW

Defendants move to dismiss under Fed. R. Civ. P. 12(b)(2) alleging a lack of personal jurisdiction over them. The question of personal jurisdiction must be addressed before a court can reach the merits of a case because "a court without jurisdiction over the parties cannot render a valid judgment.*" OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998) (citing *Leney v. Plum Grove Bank*, 670 F.2d 878, 879 (10th Cir. 1982)).

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." *Burger King Corp. v. Rudzewicz*, 471 U.S.

---

heard of Myriad Capital, Inc. and it has no affiliation with Myriad Force. Dkt. 33-5. Rather, Myriad Force is wholly owned by non-party Myriad Capital (Pty) Ltd. Furthermore, in its corporate disclosure statement, AEX states it is wholly owned by Myriad Investments LLC, which also is not a party to this case. Dkt. 40. It is unclear whether or how any of the non-party Myriad entities are related.

[2] Defendants also contend under Rule 12(b)(6) that Plaintiff has failed to state a claim upon which relief could be granted. Because the Court concludes it does not have personal jurisdiction, it does not address those arguments.

462, 471–72 (1985) (internal quotation marks and citation omitted). Therefore, a "court may exercise personal jurisdiction over a nonresident defendant only so long as there exist minimum contacts between the defendant and the forum state." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1979) (internal quotation marks and citation omitted). The "minimum contacts" requirement protects a defendant "against the burdens of litigating in a distant or inconvenient forum[;]" and ensures "the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." *Id.* at 292. If minimum contacts are shown, the court must then determine whether the exercise of personal jurisdiction over the defendant would "offend traditional notions of fair play and substantial justice." *OMI Holdings, Inc.*, 149 F.3d at 1091 (citing *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 113 (1987)).

The Colorado long-arm statute extends jurisdiction to the greatest extent permitted by due process, which allows the court to bypass the statutory analysis and proceed with the due process inquiry. *AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008) ("The Colorado Supreme Court has interpreted Colorado's long-arm statute to extend jurisdiction to the fullest extent permitted by the Due Process Clause of the Fourteenth Amendment."). Consistent with due process, a court may exercise personal jurisdiction in one of two ways. First, a court may assert specific jurisdiction over a nonresident defendant "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation

results from alleged injuries that 'arise out of or relate to' those activities." *Burger King*, 471 U.S. at 472. Second, where a defendant has not engaged in forum-related activities, the court may nonetheless exercise general jurisdiction over the defendant based on the defendant's general business contacts with the forum state. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 415 (1984).

The plaintiff bears the burden of establishing either general or specific jurisdiction over the defendants. *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988). "Where, as in the present case, there has been no evidentiary hearing, and the motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written material, the plaintiff need only make a *prima facie* showing that jurisdiction exists." *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 839 (10th Cir. 2020) (quoting *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995)).

The Court accepts the well-pleaded allegations (plausible, nonconclusory, nonspeculative facts) of the operative complaint as true "to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's *prima facie* showing is sufficient notwithstanding the contrary presentation by the moving party." *Wenz*, 55 F.3d at 1505 (internal quotation marks and citations omitted).

## ANALYSIS

In resolving this question, the Court begins with the personal jurisdiction allegations in Plaintiff's Second Amended Complaint (SAC). According to Plaintiff, he was recruited and applied for the AEX CEO position while he lived in Colorado. He further contends that Defendants[3] advertised the role as a completely remote position. Dkt. 31, ¶12. Plaintiff states he communicated with Defendants about the role and negotiated his contract while he lived in Colorado and Defendants knew he lived in Colorado. *Id*. ¶¶13, 14.

Upon hiring Plaintiff, Defendants allegedly classified him as a full time "remote employee." *Id*. ¶14. Plaintiff further relies on the fact that Defendants routinely initiated phone calls, sent text messages and emails, and messaged him in Colorado from North Carolina and South Africa to discuss Defendants' business operations and strategies. *Id*. ¶15. According to the allegations, Plaintiff also conducted substantive business on Defendants' behalf while in Colorado, including making sales pitches to potential customers, attending industry conferences, and using Defendants' credit cards on business related spending. *Id*. ¶¶23, 24, 25.

Plaintiff also alleges that throughout his employment Defendants were engaged in substantive business in Colorado. *Id*. ¶18. He contends Defendants acted through non-party Hyper Fiber to obtain Master License Agreements with the

---

[3] Plaintiff largely engages in group pleading and refers to Defendants en masse. Where Plaintiff has not distinguished between them, the Court does the same.

Colorado municipalities of Firestone, Broomfield, Ft. Lupton, and Dacono, to construct fiberoptic and internet infrastructure and services. *Id*. ¶¶18, 19. Plaintiff alleges that in the spring of 2024, Defendant Myriad, acting again through Hyper Fiber, built fiberoptic networks in three Colorado municipalities and built a data center in Denver, Colorado. *Id*. AEX also allegedly leased and purchased equipment in Colorado for use at two "Points of Presence" to deliver Myriad services in Colorado and advertised on its company's LinkedIn page that "AEX is Live in Denver!" and "AEX Infrastructure is now live in Colorado!" *Id*. ¶21.

The Court concludes these allegations do not establish specific or general jurisdiction.

### A.    Specific Jurisdiction

As noted above, when determining whether to exercise specific jurisdiction, courts typically make three inquiries: "(1) whether the defendant purposefully directed its activities at residents of the forum state; (2) whether the plaintiff's injury arose from those purposefully directed activities; and (3) whether exercising jurisdiction would offend traditional notions of fair play and substantial justice." *Newsome v. Gallacher*, 722 F.3d 1257, 1264 (10th Cir. 2013). Minimum contacts, in the context of specific jurisdiction, must arise out of contacts that the "defendant himself" creates with the forum state. *Burger King*, 471 U.S. at 475. It is well established that it is insufficient for the plaintiff to be the only link between the defendant and the forum State. *See Burger King*, 471 U.S. at 478.

6

With their Motion, Defendants attached affidavits either providing context for, or controverting, Plaintiff's jurisdictional allegations. Specifically, Mr. Wilson attests that upon Plaintiff's hiring, Plaintiff was given a document regarding the CEO role that specifically identified the "location" of the position as North Carolina. Dkt. 33-1, ¶6. And Mr. Wilson told Plaintiff on multiple occasions that the position required Plaintiff to be physically present in the AEX offices. *Id*. ¶7. Although Plaintiff occasionally worked from North Carolina, he more often worked remotely for his own convenience, and he was repeatedly told that he needed to be present in North Carolina more often. *Id*. ¶¶ 9-10.

In his Response to the Motion, Plaintiff emphasizes that the AEX CEO job description gave him wide discretion over Defendants' domestic market development and business-related activities; *i.e.* soliciting new customers and attending conferences. Dkt. 37, p.10. But this argument and Plaintiff's other allegations that he conducted substantive business in Colorado on AEX's behalf, is directly undercut by Mr. Wilson's affidavit stating Plaintiff was told on multiple occasions to stop attending industry conferences and soliciting new customers. Dkt. 33-1, ¶12. Plaintiff was instructed to instead focus on AEX's current customers, none of which were in Colorado. *Id*. ¶¶12, 19. He further attests that none of Plaintiff's solicitation efforts resulted in any contracts with Colorado-based companies. *Id*. ¶¶12-13.

In addition, Plaintiff's allegation that Defendants knew he lived in Colorado is contradicted by the affidavit of Alexandria Davis, AEX's human resources specialist.

7

Dkt. 33-4. According to Ms. Davis, although Plaintiff was initially classified as being based in North Carolina, Plaintiff later informed her that he was a Florida resident. *Id.* ¶¶3-4. Plaintiff's cell phone number had a Florida area code, and his home address was in Florida. *Id.* ¶5. At no time during his employment did Plaintiff's records indicate he lived in Colorado. *Id.* ¶4.

With respect to Defendants' alleged business dealings in Colorado—in particular Plaintiff's attempts to attribute the actions and business dealings of Hyper Fiber to Defendants—Mr. Wilson and Mr. van der Spuy both state that Hyper Fiber is not a parent, subsidiary, or agent of either AEX or Myriad. Dkt. 33-1, ¶23; Dkt. 3-5, ¶3. Rather, Hyper Fiber is AEX's customer. Dkt. 33-1, ¶23. Mr. Wilson's affidavit further clarifies that to the extent AEX has any business contacts with Colorado, they occurred *after* Plaintiff's employment was terminated. *Id.* ¶¶14, 17. Without any evidence to the contrary, Plaintiff cannot demonstrate that his injuries resulted from Defendants' Colorado-based activities.[4]

In opposing dismissal, Plaintiff insists that the burden of making a prima facie showing is a light one. While this is true, Plaintiff also has a "duty to support jurisdictional allegations in a complaint by *competent proof* of the supporting facts if

---

[4] In his Response, Plaintiff argues that his injuries arose out of *his* activities in Colorado, namely those activities he took in furtherance of his employment. Dkt. 37, p.11. But Plaintiff's activities are not the appropriate inquiry. Personal jurisdiction is based on a *defendant's contact* with the forum, not the plaintiff's contact with a defendant and the forum. *Rockwood Select Asset Fund XI (6)-1, LLC v. Devine, Millimet & Branch*, 750 F.3d 1178 (10th Cir. 2014).

the jurisdictional allegations are challenged by an appropriate pleading."[5] *Pytlik v. Pro. Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989) (citing *Becker v. Angle*, 165 F.2d 140, 141 (10th Cir. 1947)) (emphasis added). But Plaintiff has not submitted an affidavit or any other admissible evidence to refute Mr. Wilson's, Mr. van der Spuy's, or Ms. Davis's affidavits. And Plaintiff's SAC is not verified. Thus, based on this record, during his employment, Plaintiff was the only direct connection between Defendants and Colorado. This is insufficient to establish specific personal jurisdiction, and the Court concludes Plaintiff has failed to make a *prima facie* showing of specific personal jurisdiction over Defendants. *Burger King*, 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot.").

### B.    General Jurisdiction

"Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's 'continuous and systematic general business contacts.'" *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996) (quoting *Helicopteros*, 466 U.S. at 416). Defendants argue there is no general

---

[5] Black's Law Dictionary defines "competent evidence" as "admissible evidence." *Competent Evidence*, Black's Law Dictionary (8th ed. 2004).

jurisdiction in this case because they do not have continuous and systematic business contacts with Colorado. Dkt. 33, pp.14-16. The Court agrees.

As discussed above, according to Defendants' affidavits, which Plaintiff has not refuted with any admissible evidence of his own, Hyper Fiber is not affiliated with Myriad and is merely a customer of AEX. Dkt. 33-5, ¶3; Dkt. 33-1, ¶23. Consequently, Hyper Fiber's Colorado business dealings and Colorado contacts are irrelevant to whether the Court has general jurisdiction over Defendants, and Plaintiff's reliance thereon is unavailing.

Turning to AEX's own contacts with Colorado, according to Defendants' uncontroverted evidence, they consist only of:

(1) A 72 x 24 x 72-inch section of server space in a Denver data center, which is owned by a non-party;

(2) Two "point of presence" consisting of a switch and a wireless device being housed in utility cabinets owned by Hyper Fiber;

(3) A post on AEX's LinkedIn page referring to these points of presence.

Dkt. 33-1, ¶¶14, 17-18.

"Simply because a defendant has a contractual relationship and business dealings with a person or entity in the forum state does not subject him to general jurisdiction there." *Shrader v. Biddinger*, 633 F.3d 1235, 1246-47 (10th Cir. 2011) (citing *Helicopteros*, 466 U.S. at 416-18). And these scant contacts do not require any maintenance by AEX employees and do not involve direct transactions with any Colorado-based customers. *Id*. ¶¶14-17. While these points of presence allow *Hyper*

*Fiber* to provide internet services to Colorado consumers, these Coloradans are not party to any contracts or other transactions with Defendants. *Id*. Without more, Plaintiff has not met his stringent burden in establishing general jurisdiction over Defendants.

Because Plaintiff has not established the minimum contacts necessary for either specific or general jurisdiction, the Court need not consider whether exercising jurisdiction would offend the traditional notions of fair play and substantial justice.

*    *    *

For the reasons shared above, the Motion to Dismiss is GRANTED IN PART based on a lack of personal jurisdiction. Plaintiff's claims are dismissed without prejudice. The Clerk of Court shall enter judgment and close this case.

DATED:  July 23, 2026.

BY THE COURT:

S. Kato Crews
United States District Judge

11